Ap. 92 Nobody is hired. Error 3. The next argued case is No. 18-1125, Rapid Completions, LLC, against Baker-Hughes, Incorporated. Mr. Nimulaitis. Thank you, Your Honors. In these IPRs, the Board applied the wrong legal standard for determining whether a parent application provides sufficient written description support for a later filed genius claim. I want to quickly go over a few key facts for this case, which I think should be undisputed, but they're important for how it applies to the standard. First, each of the claims at issue here requires a specific set of mechanical components. One of those components is some kind of mechanism for opening the ports in an oil and gas tubing string. Now, the claims cover two different types of port opening mechanisms. One of those mechanisms is what we refer to in the briefing as the two-piece plug embodiment, and that is what's disclosed in the preferred embodiment. So the preferred embodiment focuses on that two-piece plug opening mechanism. The other type of port opening mechanism is the one-piece plug opening mechanism. That is not specifically disclosed in these patents, but everyone agrees that that alternative port opening mechanism was already known in the prior part. So that's the basic issue here. It's the same as any other genus species case where you have a genus claim. It covers at least two species. Here one of them is disclosed in the specification at issue, one of them is not. Isn't your problem that you broke the chain of continuity from the 06-07 patent to, say, the 009? You have broader claims in the 009 and 451 patents, which are before us, and they may not have been supported by 047, but when you filed 009 and 451, you changed the disclosure, so you've got broader claims here, and because of the break in the chain, they're anticipated by 06-07. Do I misunderstand? So that's partly right, but I think legally it's not quite as straightforward as you seem to be saying, or as I understand the point to be. So yes, there's an original parent application, later on a continuation in part was filed, and then these applications were filed. So that continuation in part relates to some other claims that aren't even at issue here, and the issue here is, did these particular claims, even though they're in a later application that ultimately goes through a continuation in part, did these particular claims have written description support that goes all the way back to the original parent? With a break. Isn't there a break? Did that appear in the 047 patent? The specification of the original parent application is identical to the specifications here. Yes, but was that the same in the 047 patent, which you need for continuity? So that the 06-07 is not a reference against you? Well, the same material in the original parent application carries through all of the applications. There was the continuation in part where some new material was added, but that new material isn't even included in these particular applications. So we can, for these claims, what we are pointing to is material in the specification of these patents that also appears in all prior applications leading to these. You're saying there's nothing missing in 047 that was in everything else? I believe that to be the case. This particular issue, I don't believe, was ever raised below or in any of the briefing. And so I've got to be honest, I did not review the file histories with that idea in mind. But isn't that the point of not having an early patent be a reference against a later one, that the later one is entitled to the priority data, the earlier one, and if there are intervening applications that they maintain a continuity of disclosure? I believe I agree with that, and we have that continuity here. But you don't have a continuity of disclosure in the specification. All you have is the additional, the broadening of the claim. Isn't that the only difference? Is the specification for the 047, the intervening thing, where a new matter was added, was that the continuation in part application? We know that the spec from the original 067 patent, the 807 application, is the same spec as we have for the 009, right? Right. So there was an intervening application where some subject matter was added, right? Right. Was that specification the same? Yes, it was the same, but for the addition of the new material. New material. Right. So all three specifications were the same? Right. So, again, this is... And the broken chain intervention issue wasn't argued or decided below. This case was taken simply as a basis of the 067 patent, the 807 application, not providing written description support for the claims that were added in the 009, right? Right. Exactly. There was never an argument that it was improper for us to claim priority back to that original parent application. The question always was, do these claims have written description support there? And getting on to that issue... And the board made a fact finding that the port opening sleeve structure was necessary for the original invention. Yes, they did state that. That, I think, is really the crux of the legal error in the board's decision. I completely agree that if you look at figure six, it has a series of components in it. And if you take out any one of those components, that figure will fail. But that is true of almost any figure in any mechanical patent. The real question, and it's the same question that comes up in any genus species case, is not, if you take a part out, will that cause this particular embodiment to fail? It is, if you take a part out and replace it with something that is functionally equivalent, would a person of skill in the art recognize that that functional equivalent was, in fact, equivalent, that it would be predictably able to perform in the same way? And that's why so many of these cases, and particularly the Bilstadt case, which really was... The complexity argument was what caught my mind in the board's finding, that written description is a fact issue. What the references teach is a fact issue. Whether or not the part opening sleeve is necessary as opposed to optional seemed to me to be reading from the references as a matter of fact. And so on the substantial evidence standard of review that we have, I had a problem with your appeal, which you can understand, I think. Yes. How do you rise up over that problem if I'm correct that the question of whether or not the part opening sleeve is necessary is a fact question? The board said it thought it was. You think it's not. Yes, Your Honor. Who wins? We win. Why? On the standard of review, the board wins. That would be true if the board applied the correct legal standard because their conclusion... By the correct legal standard, you're going to say that the species always describes that you win. I'm going to say if the board has to consider knowing what a person of skill and the art would have known about the prior art, about what is available to them at that point, would this person of skill and the art have thought that this is necessary to every embodiment of the patent, or is it just something that's necessary to make that particular figure work? I'll give you another example. In that same figure, it shows multiple sleeves in the tubing string that are all held in place. Each one of those sleeves is held in place because there's a little metal pin that connects the sleeve to the tubing string. Those pins are dislodged by the port opening sleeve as it moves down the pipe. Right. Those additional port opening and enclosure sleeves wouldn't function without the port opening sleeve. If you take the port opening sleeve out, nothing happens. The ball just sort of slides down the pipe and doesn't affect any openings or closings. That's, I think, why the board felt that the port opening sleeve was a necessity. So, two issues here. One, on this point I was making about the pins holding the sleeves in place. Right. Those pins are what's disclosed in the figure as holding those sleeves in place. If you take those pins out. What do they call them? Shear pins. Shear pins? If you take those pins out, all those sleeves can just move around however you choose. Dogs? Are those the dogs? What are the dogs? Dogs are a completely different mechanism. It has nothing to do with the shear pins. The point I'm making about the shear pins is if you take those pins out, the sleeves can just move around. They won't be held in place until the ball hits and causes the reaction that you want. But everyone knows that shear pins are not the only way to hold things in place. Which of the shear pins is on the number of the drawing? I'm looking at the red brief, which you don't want me to at page 8, just because it's got the, it's in color. It's easier to see. So, 350? Figure 6. Where are the pins in figure 6? Please. 350 is an example? 350, okay. So that's a pin holding it in place until the ball comes down, hits that seat, and the fluid pressure causes the ball and the sleeve, the combined plug, to push down the hole. And it shears it. What happens to the 350 pin when the ball, the 324, pushes into the port opening sleeve? Once the fluid pressure is sufficient, that pin breaks. Pops the pin. Yes, and it's allowed to move down the tubing string. But a person of skill would recognize that you could use shear screws. You could use an adhesive. You could use anything that holds it in place until the fluid pressure gets high enough. But there's never been an argument that these things are invalid. That's irrelevant. That doesn't do anything for opening and closing holes in the pipe for purposes of fracking, right? That happens when you get to the port closure sleeve part of the patent. I mean, for example, if you just take in Figure 6 and you take the ball and you push it up against the port opening sleeve and start pushing it down the pipe, right? Right. Then you have to get to a place where there's an opening in the pipe that you're going to – you have to – nothing is happening until you get to that next step, right? Right. So why is it significant that you have the pins? Because – What is your pin argument? The pin is necessary to make Figure 6 work. If you take the pin out and don't replace it with anything, Figure 6 fails to work. The claims don't say anything about what type of pin or adhering mechanism it's used, but there's never been an argument that the claims are invalid because they fail to recite that particular component. So that's just an example of how the proper way to – But doesn't that go to support the board's argument that the structure of the port opening sleeve is necessary for the invention? It's necessary to have the pins, 350. It's necessary to have – it's like a mount. It's going to slide down the pipe, and when it gets to a particular point at the pipe, then the dogs are going to suffice to help to open the hole in the pipe to allow the material that's pushed down in the pipe to go out into the rock, right? Right. And when you're finished with that hole, if you push it hard enough, it'll go on past and it'll automatically close the hole where you have previously pushed in the material, and you'll go to a depth lower to decide whether you need to do some fracking there. So it's incremental. The device, the carriage, is going down the pipe incrementally from first to one hole to do a little fracking and then to another. That's the way it works, isn't it? Yes. And the board, looking at this, reached a factual conclusion. This invention won't work. The port opening sleeve is a necessity. They were looking at – I mean, they were analyzing the wrong issue. What they asked was, will figure six work if you remove this component? And that's not the question. That's not what the law requires. If that's what the law required, you look at a figure of a mechanical device and figure out – What was wrong with the way I was seeing this, whether it's figure six or whether it's just simply looking at how the invention functions, looking at the significance of the port opening sleeve. Because you have an invention that you're trying to save from invalidity that does not require a port opening sleeve, doesn't require any structure like that, apparently to achieve the opening and closing of the holes. Right. And so what the board was saying is, well, where is their support in the priority application? I can address that question. If you look back at the background of the patent section, it talks about what did the inventors think they invented, what problem were they trying to solve. They talk about how one way of running a tubing string was to divide it up into stages. So we're using one device or one plug, something like that, to open up a port in a particular stage. You frack it. Another device opens up the next port. You frack that. Another device opens up the next one. So that's fine, but it's not terribly efficient. So they talk about another thing done in the prior art. You have multiple holes in the tubing string, but nothing's covering them. So you just run that down hole, and you can pump fluid through all those holes at the same time and treat a larger section of the well. But that has other problems. If you're not closing up those holes when you're running it into the well, there's a number of technical problems that can come up. So what they came up with is a way to open up multiple holes or multiple ports in the device using a single plug so that you can do that simultaneous fluid treatment. When you look back at that background of the invention section, it says nothing about how critical this figure 6 sleeve is. It doesn't mention that at all. I believe that's the end of my time. And where is that in the 009? Can you give me a column? Columns 1 and 2. Or column 1? Yes. Background of the invention? The key point I'm making here is that— that describes the invention that you're claiming. As I understand the written description of the 009, you can't do it entirely from what is in the mind of the ordinary artisan. To use vernacular, you need a hook. You need to find something in the specification that one of ordinary skill in the art would have understood— Right. Right? Right. —to describe the scope of your invention. So what's the hook in the 009 application? The embodiment that matches up with these claims is figure 6. But the question is, in a genus-species case, is that particular embodiment enough to claim the broader genus? When you look at what the inventors explained about what they were trying to prevent, which is using one plug to open multiple ports to do simultaneous fluid treatment, it's clear that you don't need to limit the claims to just the specific mechanical device shown in figure 6. Okay. Thank you. Sorry if I took up too much time. We'll save you rebuttal time. Okay. Okay. Mr. Garrett. Good morning. May it please the court, Mark Garrett for Appellees. The inventors never said that the function of the invention is one plug opens multiple ports. That's really the fundamental shortcoming with the factual argument that he just made. If you look at the summary of the invention, the description says, the invention always includes a port opening sleeve. And there are two different aspects. In one aspect, and it's using the port opening sleeve to open many different port closures. So there are two versions of this. In one version, the port opening sleeve is the port opening sleeve we see in figure 5, which is they call it the port cutter sleeve. And with that sleeve, you can open multiple port closures that take the form of caps. So that port opening sleeve captures a ball, travels down the tubing string under pressure, and shears off those caps. The port closures are opened. In the other version... It doesn't close them up again when it leaves. It does not. Figure 5 is just basically still using the same port opening sleeve, but driving it through the length of the pipe without any intermediate stopping. That's correct. Or without closing the ones they open. So in the other version, you see what we see in figure 6, which is a port opening sleeve that has dogs on the outside of it. It gets the plug. It travels down. And in that version, the port closures are the port closure sleeves. So the invention has always, always been about a port opening sleeve. It's either going to shear off the port closures, or it's going to engage with and shift the port closures. What do you do with ECHLS? Isn't ECHLS the prior art patent that deals with this problem without using a port opening sleeve? ECHLS does address the opening of multiple sleeves with a single plug, and it does not use, as you point out, Your Honor, a port opening sleeve like what is shown. Okay, so one of our ordinary skill in the art clearly would have known, before the original patent was filed, how to achieve this with just using a plug or a ball. Right. So the question is ECHLS existed, and its operation is knowable, and our expert testified to that in paragraph 59 of the second declaration, which is on page 1464 of the appendix. But the question for written description support isn't just what does the claim cover. That's basically... Well, I know what I'm trying to get back at is that if written description requires, it doesn't require anything in the spec. If it's just in the mind of one of our ordinary skill in the art, then you'd sit down, right, because ECHLS would take you away. That's right. So the question here is what is there in the description that suggests that the patentee had ECHLS in mind. That's right. And the way we get to answering that question, I think, most immediately, is to look at column 9, line 45, to column 10, line 38. You won't see it as... Column which is it? So it's column 9, line 45, to column 10, line 38, and I'm looking at A85. Yep. And the challenge for them and the problem with their position is when you read this description, you will not find a single example of language suggesting that the function performed by the port opening sleeve, in other words, engaging the port closure sleeve and shifting it open, is a function that generally can be accomplished with structures that aren't shown. There's no language along the lines of it's not shown in the figures, but you could do this function in a different way. Well, your argument would be the same with regard to figure 5, right? I believe that's correct. Well, you'd make the same argument. Yes. Figure 5 won't work without the port opening sleeve. That's correct, Your Honor, but it... Because all figure 6 is adding is a little fancier version of one that says, well, I'll close the door as much as I open them. Yes. Yes. Yeah. So there's no general language in the column and line numbers that I just cited that would suggest to a person of ordinary skill in the yard that reading that, you could accomplish this with a different function, something like what's shown in Eccles. We're not disputing that the claim covers Eccles, but that's not the real question. So their arguments have boiled down to legal error. They want to charge the board with legal error. The board's legal analysis and its legal standard appears on pages 10 and 11 of the record, and it's reflected throughout its discussion of the issues and arguments that the parties raised. All of its statements are correct statements of the law. Its application of those is correct. Their main arguments are a single species supports a genus. We know that's not correct from Curtis, as we pointed out. We know it's not correct from Ariad. This court's embunked a decision that decided, in part, the scope of the written description requirement. They've essentially kind of backed off of that in their reply and dropped back and said the board needed to make a finding on predictability. And to the extent that they argue predictability below, that's on pages 359 to 362 of the record, and the board addressed those arguments on pages 9, 10, 14, and 15. So to the extent that they're charging the board with error over needing to make a predictability finding, in fact, the board did find that. Their last legal error argument is really grounded in the obviousness issue. Can obviousness be a bridge to written description support? And did the board err by not giving credit to their expert's testimony, Mr. McGowan, who admitted that what he was contending about what the art would show is really what it would show what would have been obvious to a person of ordinary skill in the art? And the board analyzed that issue the same way that this court analyzed it in ICU medical and the same way that Ariad tells us is proper to analyze it. Obviousness is not a legal bridge to written description support. So for those reasons, unless there are further questions, I will... How important is the board's finding that the port opening sleeve is necessary? I think it is important and it's fully supported by the record. Their statement... Is it dispositive? I believe it probably is dispositive because in making that statement, the considerations that they took into account weren't just the language that I quoted from... It seemed to me that the statement was shorthand for quite a lot more. It was. And so what I was getting to is they took into consideration the scope of the original claims. That's a strong reflection of what the inventors intended their inventories to be. They looked at the abstract. And that also was part of the decision in which the board interpreted and examined Pat and others' arguments, appellants' arguments, about the predictability issue that it relies on now. So I think that statement reflects the board's consideration and is consistent with the board's consideration of all the arguments and the evidence that the other side sued. Any more questions? No, thank you. Thank you. Thank you, Mr. Garrett. Thank you. Let's see. Thank you, Your Honors. Judge Fletcher asked the question, what does the description show about what the patentee had in mind about what this invention is? And I think that's an interesting way to phrase the issue here because I admitted up front that this particular embodiment not disclosed in the specification. I don't think there's any requirement, though, that the only way you can get a genus claim is if you include some kind of weasley language about how we can use other things that do something similar or something like that. I mean, there is some kind of that boilerplate language in this patent, but I don't think that's a dispositive issue. What matters is knowing what a person of skilling art knows, what would they recognize as the predictable alternatives? And that is the way this issue is characterized in Bilstead, Honeywell, Hynex, Peters, Rasmussen. In the briefing, we talk about all those cases, but there was one thing common to all of them. They disclosed a particular embodiment. They don't disclose another embodiment. The claims cover all of them. And what that issue turned on is what would a person of skilling art know and how would they have interpreted the patent? And the other, I think, big point here is getting back to the board's necessity finding where they said that this is a necessary feature. That is a conclusion. So you've got to look at what reasoning did the panel provide to reach that conclusion? Because it doesn't matter what we think they were thinking about. What matters is what is written in the decision itself. It's an administrative decision. And what is in the decision are— Well, they made a predictability decision that's adverse to you, right? On the predictability point? No, their finding of necessity was based on two facts. The two-piece plug embodiment is described in the abstract, and that's what the original claims were focused on. But that cannot be dispositive on this issue. Those two facts alone can't do it because you've got to consider what would a person of skilling art know, what was already in the prior art. So everyone knows that this alternative was known in the prior art. And would a person of skilling art recognize that that alternative operated in the same way? And the experts basically agreed that, yes, it would have been easy to swap out one for the other that was already known. So given that that's the fact background, that's really what's dispositive here. At a minimum, the board should have looked at those facts, looked at the expert testimony, and saw how that applied in the written description context. And they did not do that. The finding that this was a necessary element of the invention was just based on those two facts, and that is insufficient to meet the burden under this text. Unless there's any further questions. No questions. Thank you. Thank you both. The case is taken under submission.